**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GWYNETH K. MURRAY-NOLAN,

    Plaintiff,

    v.

SCOTT RUBIN, et al.,

    Defendants.

Civil Action No. 22-801 (EP) (AME)

**OPINION**

**Evelyn Padin, U.S.D.J.**

Plaintiff Gwyneth K. Murray-Nolan alleges that Defendants violated her First Amendment rights by retaliating against her chosen protest of COVID-related masking requirements: not wearing a mask at a school board meeting. DE 10 (the "Amended Complaint"). Defendants fall into three general categories: (1) those associated with Cranford Public Schools or the Cranford Board of Education (the "Board Defendants"); (2) the Board's law firm and attorneys (the "Attorney Defendants"); and (3) the Cranford Police Department and its employees who arrested Plaintiff during a February 14, 2022 Board meeting (the "Police Defendants").[1] All Defendants move, pursuant to Federal Rule 12(b)(1) and (6), to dismiss the Amended Complaint. Plaintiff opposes.[2] For the reasons below, this Court grants the motions and dismisses the entire Amended Complaint with prejudice.

---

[1] Plaintiff also sued Lesli Rice, President of the Cranford High School Parent Teacher Association. Am. Compl. ¶ 28. Plaintiff later stipulated to dismiss those allegations. DEs 18, 38. Accordingly, the Court omits any allegations pertaining to Rice.

[2] Only the Attorney and Police Defendants replied. DEs 36, 42.

I.      **BACKGROUND**[3]

   A.  **The COVID-19 Executive Orders**

   This dispute arises from the COVID-19 pandemic, confirmed to have hospitalized at least 130,711 and killed 31,378 New Jerseyans.[4] *New Jersey Covid-19 Data Dashboard,* https://covid19.nj.gov/forms/datadashboard (last accessed August 24, 2022). On March 9, 2020, New Jersey Governor Phil Murphy issued Executive Order ("EO") 103, which declared a Public Health Emergency and state of emergency. As the pandemic persisted, Governor Murphy issued a series of successive EOs, including EO 251, which became effective August 9, 2021. *See* EO 251, DE 21-3 at 10 (listing all prior EOs). EO 251 mandated, as relevant here, that "[a]ll public, private, and parochial preschool programs and elementary and secondary schools, including charter and renaissance schools…must maintain a policy regarding mandatory use of face masks by staff, students, and visitors in the *indoor portion of the school district premises*," with certain exceptions including health, age, and safety. *Id.* 13-14 (emphasis added).

   On January 11, 2022, Governor Murphy issued EO 280, which declared a new Public Health Emergency due to a surge in COVID-19 cases, and extended EO 251 via EO 281. *Id.* 16, 25). EO 252's masking policy remained in effect until March 7, 2022, when EO 292 rescinded EO 251. Thus, EO 251, which required masking in the "indoor portion of the school district premises,"

---

[3] As required on motions to dismiss, this Court accepts the Amended Complaint's well-pled factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Phila. Taxi Ass'n v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018). The Court notes that the Amended Complaint frequently intermingles facts with legal conclusions; only the well-pled facts are included here.
[4] Add to that number 3,102 "probable" COVID-19 deaths.

remained in effect between August 9, 2021 and March 7, 2022. The relevant events took place during that time period.

### B. The Parties

#### 1. Plaintiff

Plaintiff, a Cranford resident, is a licensed New Jersey attorney with two minor children enrolled in Cranford Public Schools. Am. Compl. ¶¶ 8, 38. Plaintiff is "well-known to the Board [as] an advocate for parental choice in masking children at school[.]" *Id.* ¶¶ 49, 58-59.

#### 2. The Board Defendants

Scott Rubin is the Superintendent of Cranford Public Schools. *Id.* ¶ 9. Kurt Petschow, Jr. is the President of the Cranford Board of Education ("Board"), which is also a Defendant. *Id.* ¶¶ 10, 19. Lisa Carbone is the Board Vice President. *Id.* ¶ 11. Terry Darling, Brett Dryer, William Hulse, Nicole Sherrin Kessler, Maria Loikith, Patrick Lynch, and Kristen Mallon are Board members. *Id.* ¶¶ 12-19. Dennis McCaffery, who is not a Defendant, is a Board employee and principal of the Lincoln School in Cranford. *Id.* ¶ 27.

#### 3. The Attorney Defendants

Sciarrillo, Cornell, Merlino, McKeever, and Osbourne, LLC (the "Law Firm") is legal counsel to Board President Rubin and the Board. *Id.* ¶ 21. Jennifer Osbourne, Esq. and Anthony Sciarrillo are named partners in the firm. *Id.* ¶¶ 20, 22.

#### 4. The Police Defendants

Defendant Cranford Police Department ("Cranford PD") was involved in Plaintiff's arrest on February 14, 2022. *Id.* ¶ 23. Anthony Giannico and Robert Chamra are Cranford PD officers. *Id.* ¶¶ 24, 26. Nadia Jones is a Cranford PD Sergeant. *Id.* ¶ 25.

### C.  History Between Plaintiff and the Board

Plaintiff "has been an advocate of unmasking children in schools since her two minor children suffered physical, mental, emotional, and/or educational mask injuries since they started wearing masks in school in or about September 2020." *Id.* ¶ 58. Plaintiff has testified about this issue before the New Jersey State Assembly and Senate. *Id.* ¶ 59. Before the events at issue, Plaintiff also spoke about the masking issue at Board meetings on at least six occasions. *Id.* Plaintiff herself "has a medical background with lung issues, making masking difficult, uncomfortable to breathe, and medical comprising" due to a "near-death" respiratory incident in spring 2019. *Id.* ¶ 61.

In September 2021, Plaintiff filed a Harassment, Intimidation, and Bullying (HIB) Complaint against Rubin, a Cranford school principal, and a Cranford school nurse after Plaintiff's children were subjected to retaliation on the first day of school related to their masks.[5] *Id.* ¶ 60. The confidential HIB Complaint, which Plaintiff insinuates was released by one or more Board Defendants, "became a source of public gossip and knowledge." *Id.*

### D.  The January Meeting

On January 24, 2022, the Board held a public meeting at the Board of Education Room in the basement of the Lincoln School, which houses classrooms, Board offices, conference rooms, and other offices. *Id.* ¶¶ 31-32. Plaintiff entered the Lincoln School unmasked to silently protest the "Cranford Schools masking policy, related Executive Orders, [and the Board's and Rubin's] lack of action related to unmasking children in schools, particularly those with medical conditions

---

[5] Plaintiff does not specify the nature of the retaliation against her children.

4

and special needs." *Id.* ¶ 33. "More specifically, …Plaintiff was protesting the Board's total lack of action in failing to challenge [New Jersey Governor Murphy's] Executive Orders related to masking children[.]" *Id.* ¶ 44.

The meeting began at 7:30 p.m. with about 20 minutes of presentations to the BOE. *Id.* ¶¶ 35-37. Plaintiff sat silently in the front row. *Id.* ¶ 38. Immediately before the public comment portion of the meeting, Defendant Osborne "interrupted and disrupted the meeting multiple times to state that everyone in the room must be masked." *Id.* ¶ 39. When Plaintiff refused a mask offered to her, Osbourne, after consulting with co-Defendant Rubin, "threatened to contact law enforcement on anyone in attendance at the meeting who remained unmasked, based on a purportedly effective Executive Order related to masking on school premises[.]" *Id.* ¶ 40.

When Plaintiff continued her silent protest, the Board, Rubin, and Osbourne excused themselves to meet in private session for ten minutes. *Id.* ¶ 41. During that ten-minute period, "almost all" others at the meeting "removed their masks in solidarity with the Plaintiff." *Id.* ¶ 42.

The Board reconvened in public session only to immediately cancel the remainder of the January meeting. *Id.* ¶ 43. The cancellation was designed to prevent the public comment from taking place because the Board knew that comments would have been focused on "protesting the [Board] and Rubin's continued masking policies, quarantine policies, and close contact policies[.]" *Id.*

### E. Between Meetings

On January 25, 2022, the Board Defendants posted on the Cranford Public Schools' Facebook page a "Statement as to why no Board business was conducted at [the January Meeting.]" *Id.* ¶ 46, DE 10 at 34-35 (Compl. Exh. A, the "Board Facebook Post"). The Board

Facebook Post invoked Governor Murphy's Executive Order 281 and referred, without naming Plaintiff, to an "individual" who violated the Executive Order by refusing to participate in the January Meeting virtually or with a mask. *Id.* According to Plaintiff, the Board Facebook Post "was implicitly referring to the Plaintiff in a manner which was intended to, and was in fact, widely understood to refer to her" and was intended to chill Plaintiff's rights, intimidate her, and damage her reputation. Am. Compl. ¶ 46.

On January 27, 2022, Plaintiff spoke with Cranford Police Chief Ryan Greco. *Id.* ¶ 50. Plaintiff confirmed that police had not been called to the January Meeting. *Id.* ¶ 51. Plaintiff informed Chief Greco of her protest's purpose. *Id.* ¶ 53. Chief Greco "implicit[ly] insinuate[ed]…that no parent would be arrested for refusing to wear a mask at a BOE meeting." *Id.* ¶ 53.

On February 10, 2022, Rubin emailed a "Statement on 2.14.22 Board Meeting." *Id.* ¶ 54, DE 10 at 37 (Compl. Exh. B, the "February Email"). The February Email, noting "the Governor's recent announcement," stated that universal masking would no longer be required beginning March 7, 2022. *Id.* The February Email also attached Board Policy 0167 and "threatened that 'law enforcement officers' would be called for the 'removal of' any person when that person 'prevents or disrupts a meeting with an act that obstructs or interferes with a meeting[.]'" *Id.* ¶ 55. The February Email stated that the "Board has a process for those who qualify for a mask exception." *Id.* ¶ 62. The process requires "written documentation from a medical professional" provided to Board Secretary Robert Carfagno by noon on the Monday before a Board meeting, *i.e.*, by noon on Monday, February 14, 2022 for that evening's meeting. *Id.* The February Email further

provided that anyone not wearing a mask or with an approved exception would be asked to wear a mask or leave. *Id.*

The February Email also stated that "only those wearing a mask were 'great role models for our children and other communities,'" implying that Plaintiff was not a "great role model for our children." *Id.* ¶ 56. Plaintiff was "clearly identifiable as the target of the email[.]" *Id.* ¶ 57.

"In an effort to mitigate the reputational damages suffered by" the Board Facebook Post and February Email, Plaintiff posted to a Cranford Families Facebook page about her children's negative experiences with masking in schools. *Id.* ¶ 65, DE 10 at 41 (Am. Compl., Exh. C, "Plaintiff's Facebook Post"). One child, who has autism and therefore "needs to see faces to understand, comprehend, and communicate," was unable to do so. *Id.* Plaintiff's other child developed sores from licking the inside of his mask, resulting in a ten percent loss in body weight in four days because he could not eat without pain. *Id.* "No doctor would write a medical exemption" for either child, though Plaintiff declined, for fear of Facebook's censorship, to state the reason. *Id.*

### F. The February Meeting

On February 14, 2022, Plaintiff filed this action, accompanied by a Motion for an Order to Show Cause with Temporary Restraints. DEs 1, 2 (the "OSC"). Plaintiff emailed the OSC to the Board Defendants at 6:30 p.m. that day, shortly before the February Meeting. Am. Compl. ¶ 69; DE 10 at 46.

Plaintiff arrived at the February Meeting, unmasked, at about 7:25 p.m. Am. Compl. ¶ 69. Defendant McCaffrey, who knew Plaintiff, advised her that he was "'told' to call the police" if

Plaintiff entered unmasked.[6] *Id.* ¶¶ 69-70. Plaintiff informed McCaffery that she had filed this action, but McCaffery continued to threaten to call the police. *Id.* ¶ 71. Undeterred, Plaintiff continued into the building. *Id.* McCaffrey called the police. *Id.* ¶ 73.

When Plaintiff arrived at the Board's conference room, the Board was in executive session behind closed doors. *Id.* ¶ 75. When the doors opened at 7:35 p.m., Plaintiff handed Board Secretary Robert Carfago a courtesy copy of the OSC. *Id.* ¶ 76. Plaintiff entered the room and sat in the front row, still maskless. *Id.*

Defendant Sciarrillo, a Board Attorney, met the Police Defendants in the hallway to "alert them that he sought to have Plaintiff arrested if she did not place a mask on her face." *Id.* ¶ 77. Sciarrillo sat next to Plaintiff and instructed her to don a mask. *Id.* ¶ 78. Plaintiff instead served him with the OSC. *Id.* ¶ 79. Sciarrillo flung away the papers and again demanded that Plaintiff wear a mask. *Id.*

When Plaintiff again refused, Sciarrillo gestured to the Police Defendants to arrest Plaintiff. *Id.* ¶ 80. Over Plaintiff's objection that she was exercising her constitutional rights, Sergeant Jones arrested Plaintiff for trespassing in violation of N.J.S.A. 2C:18-3B, a disorderly persons offense. *Id.* ¶ 82.

Plaintiff was processed at Cranford PD Headquarters for one hour and ten minutes. *Id.* ¶ 90. During that time, Plaintiff was handcuffed to a metal bench, "bruising…both wrists." *Id.* Plaintiff advised officers that she had a medical procedure scheduled the next morning which

---

[6] The entire interaction is apparently on video, though no party attaches it. *Id.* at ¶¶ 70, 84. Because the Court accepts Plaintiff's well-pled factual allegations, the video is not germane to the Court's resolution of the motions.

required her to drink Gatorade. *Id* at ¶ 91. Plaintiff was not given the opportunity to do so, placing her "in great discomfort and at risk of dehydration[.]" *Id.* Defendants' actions caused Plaintiff "embarrassment, humiliation, … fear of physical violence, anxiety, nightmares, emotional distress, and/or damage to her personal and professional reputation." *Id.* ¶ 93.[7]

### G. The Complaint

The Amended Complaint alleges six causes of action, four of which remain.[8] First, Plaintiff alleges a civil rights claim against all Defendants pursuant to 42 U.S.C. § 1983 (Count One). *Id.* ¶¶ 98-107. Second, Plaintiff alleges that Defendants violated the New Jersey Civil Rights Act, N.J.S.A. 10:6-2c (Count Two). *Id.* ¶¶ 108-09. Third, Plaintiff alleges a conspiracy between Defendants to conspire to violate her civil rights (Count Three). *Id.* ¶¶ 110-113, citing 42 U.S.C. § 1985. Fourth, Plaintiff alleges that Defendants failed to prevent said conspiracies (Count Four). *Id.* ¶¶ 114-116, citing 42 U.S.C. § 1986.

For each, Plaintiff seeks compensatory and punitive damages. Plaintiff also seeks injunctive relief enjoining and restraining Defendants from:

1. Threatening the arrest of any parent or citizen attending an in-person Board of Education meeting, or otherwise arresting any such person including, but not limited to, the Plaintiff, who is exercising his or her United States or New Jersey civil rights, as aforesaid, while not being disruptive or disorderly;
2. Any and all attempts of deprivation of freedom of speech of any parent, taxpayer, or citizen in attendance at a Board of Education meeting by further cancellation or "walk out" of any scheduled Board of Education meeting;
3. All attempts at restriction of freedom of speech at any Board of Education meeting, which conduct is not disorderly or disruptive, absent engaging in narrowly tailored restrictions for issues which involve substantial public interest;

---

[7] Though this has the initial appearance of an excessive force claim, Plaintiff does not explicitly assert one.
[8] Plaintiff dismissed the Fifth and Sixth claims, which were against Defendant Rice only.

4. Further threats, intimidation, or coercion against the Plaintiff and any other parents/citizens, via email, social media posts, or by any other means, which may have the effect of chilling the First Amendment rights of the Plaintiff and other parents/citizens;

5. Taking further retaliatory action against the Plaintiff and/or her children through the dates of their graduation from the District of Cranford school system; and

6. Violating N.J.S.A. 10:4-6, *et seq.* [the "NJCRA"].

On February 17, 2022, Judge Wigenton denied Plaintiff's OSC. Judge Wigenton held that the motion failed to provide a written certification setting forth: (1) efforts to give Defendants notice; (2) the reasons notice should not be required; and (3) details regarding the alleged violation of Plaintiff's rights. Am. Compl. ¶ 68; DE 3. The Board (DE 12), Attorney (DE 21), and Police (DE 27) Defendants each subsequently moved to dismiss the Amended Complaint.

## II.    LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (cleaned up). While Federal Rule of Civil Procedure 8(a)(6) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.*

570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plausibility of claims challenged at the motion-to-dismiss stage is analyzed through a three-step process. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The first step is the articulation of the elements of the claim. *See id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The second step involves reviewing the complaint to disregard any "'formulaic recitation[s] of the elements of a ... claim' or other legal conclusion," *id.* at 789 (alteration in original) (quoting *Iqbal*, 556 U.S. at 681), as well as allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," *id.* at 790 (citation omitted). The third step evaluates the plausibility of the remaining allegations – after assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor. *See id.* at 787, 790; *see also Iqbal*, 556 U.S. at 679; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

---

[9] In analyzing a Fed.R.Civ.P. 12(b)(1) motion, courts apply the same legal standards as applicable to a motion filed pursuant to Fed.R.Civ.P. 12(b)(6). *In re Franklin Mut. Funds Fee Litig.*, 388 F.Supp.2d 451, 459–60 (D.N.J. 2005) (holding that when a defendant files a Fed.R.Civ.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the standard of review for a "facial attack" is similar to the standard governing a Fed.R.Civ.P. 12(b)(6) motion to dismiss).

### III.    ANALYSIS

#### A. Article III Standing

All Defendants seek to dismiss on standing grounds. DE 21-1 ("Law Defs.' Br.") at 19, *et seq.*; DE 12-2 ("Board Defs.' Br.") at 10, *et seq.*; DE 27 ("Police Defs. Br.'") at 20, *et seq.*). Article III of the United States Constitution extends the judicial power of the United States to "cases" and "controversies." "The issue of standing is jurisdictional," and thus generally a threshold issue. *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Government of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000). "The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

To have standing, plaintiffs must have a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Thus, "[t]o establish constitutional standing, 'a plaintiff must show (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). "[A]llegations of *possible* future injury" are not sufficient. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original).

#### 1. Particularized injury

The Board and Police Defendants argue that Plaintiff does not have standing because her claims are too general. Police Defs.' Br. 21; Board Defs.' Br. 17. The Court disagrees.

Federal courts are not venues to seek simply "to have the Government act in accordance with law." *Allen v. Wright*, 468 U.S. 737, 754 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 (2014). Thus, when the alleged injury is undifferentiated and common to all members of the public, courts routinely dismiss such cases as "generalized grievances" that cannot support standing. *United States v. Richardson*, 418 U.S. 166, 173–75 (1974). In the context of mask mandates, individuals attacking the mandates generally lack standing because their claims are not differentiated from those of every other individual subject to the same mandate. *Parker v. Wolf*, 506 F. Supp. 3d 271, 287–88 (M.D. Pa. 2020) ("Plaintiff's alleged injuries suffered as a result of wearing a mask are *identical* to every other citizen in the Commonwealth"), *aff'd sub nom. Parker v. Governor of Pennsylvania*, No. 20-3518, 2021 WL 5492803 (3d Cir. Nov. 23, 2021).

But contrary to the Police and Board Defendants' arguments, Plaintiff is not, or at least not *solely*, challenging any mask mandate.  Rather, Plaintiff alleges that Defendants retaliated against *her* for her views by canceling the January Meeting, threatening (and acting on those threats) to arrest her at the February Meeting, and publishing the confidential HIB Complaint. DE 13 at 19-20.  Those allegations are sufficiently particularized to find standing. *See Baldeo v. City of Paterson*, No. CV185359, 2019 WL 277600, at *12–13 (denying motion to dismiss where plaintiff alleged denial of First Amendment rights as a reporter and private citizen to attend and speak at a council meeting where he intended to disclose information related to an elected official's use of taxpayer money). Accordingly, Plaintiff's claims are sufficiently particularized to enjoy Article III standing.

13

### 2.  Redressability and Mootness

All Defendants argue, in substance, that any alleged harm is not redressable by Plaintiff's requested relief. Board Defs.' Br. 17; Police Defs.' Br. 22; Att'y Defs.' Br. 19. Plaintiff disputes Defendants' characterization of her protest. She explains that her protest was aimed not at Governor Murphy's executive orders, but instead at the "Superintendent and Board['s]…inaction in helping children in the District, most particularly children with special needs and medical conditions adversely affected by the Board's masking policy, such as her own two children." *See, e.g.,* DE 39 at 20.   Even accepting Plaintiff's characterization of her protest, her requested injunction would not redress her stated harm.

First, the requested injunction is wildly expansive, requesting that the Court enjoin all retaliation and First Amendment violations against all Cranford parents and citizens. Federal Rule of Civil Procedure 65(d)(1)(C) requires that injunctions "describe in reasonable detail...the act or acts restrained or required." "Injunctions that 'merely instruct the enjoined party not to violate'" the law "generally are overbroad, increasing 'the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful.'" *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) (quoting *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004)). Broad, "obey-the-law" injunctions do not give a restrained party fair notice of what conduct will risk contempt. *Louis W. Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762 (3d Cir. 1994); *Worsham v. TSS Consulting Grp., LLC*, No. 618CV1692, 2019 WL 7482221, at *3 (M.D. Fla. Sept. 18, 2019) (discussing disfavored ""Obey-the-law" injunctions). Even the single request for injunctive relief pertaining just to Plaintiff, a request to enjoin "further retaliatory action" through the date of her children's graduation, is still so broad as to be unenforceable.

But suppose that the requested injunction could be narrowed to a permissible scope. Even still, it would not be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  This is because "Plaintiff has neither sufficiently alleged an intent to engage in the proscribed conduct, nor adequately alleged…a credible threat of future enforcement by Defendant." *Schiavo v. Carney*, 548 F. Supp. 3d 437, 442–43 (D. Del. 2021), *aff'd*, No. 21-2368, 2021 WL 6550638 (3d Cir. Nov. 18, 2021).

Plaintiff would have difficulty making such an allegation, because her requests for injunctive relief, as Defendants argue, are now moot. *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *10 (S.D. Fla. Aug. 30, 2021), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021) (dismissing requests for injunctive and declaratory relief relating to local COVID-19 mandates where Florida Governor's executive order eliminated and superseded all such mandates).

As Plaintiff herself implicitly acknowledges, the Executive Orders' (and thus the Board's) masking policy have been rescinded. DE 30 at 20 (discussing "bringing masking back"). Plaintiff argues that the masking policy could return "depending on the CALI score of school districts." DE 30 at 20. However, the document cited by Plaintiff, a PDF file entitled "K-12 School COVID-19 Screening Testing Program Overview," relates (as the name implies) to a COVID testing regime, not a masking policy.  *See* https://www.nj.gov/health/cd/documents/topics/NCOV/K12_school_testing_packet.pdf (accessed August 22, 2022). But even if the document did plan for a potential return to masking, a speculative plan is not a policy. To the Court's knowledge, there has been no

return to any mandatory masking policy in New Jersey schools. Accordingly, this Court will dismiss Plaintiff's injunctive relief claims for lack of standing.

Plaintiff is correct, however, that at least some component of her alleged harm remains redressable by her economic damages claim. DE 30 at 20. Where a plaintiff seeks compensatory damages for alleged civil rights violations, an order awarding monetary damages, however nominal, may redress the injury. *See Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1177 (11th Cir. 2009) (permitting § 1983 claim to proceed even though plaintiff had not alleged compensatory damages that flowed from constitutional violation); *Maxineau v. City of New York*, 2013 WL 3093912, at *11 (E.D.N.Y. 2013) ("Because [the plaintiff] alleges constitutional violations, a successful outcome in litigation would entitled him to, at the very least, nominal damages. This is sufficient availability of redress for the purposes of Article III standing.").

Accordingly, while the claims for injunctive relief are dismissed for lack of standing, the economic damages claim would survive. For the reasons below, however, the substantive civil rights claims fail to state a claim.

**B.  Failure to State a Claim**

**1.  Plaintiff fails to state a § 1983 claim**

**a.      Plaintiff's conduct was not inherently expressive, and therefore not protected by the First Amendment**

All Defendants argue that Plaintiff's Count One fails to state a claim under Section 1983. Att'y Defs.' Br. 30; Board Defs.' Br. 20; Police Defs.' Br. 23. Plaintiff responds that Defendants violated Plaintiff's First and Fourteenth Amendment rights by retaliating against her for expressive conduct: not wearing a mask where one was required. DE 13 at 21; DE 30 at 25; DE 39 at 31. Specifically, Defendants retaliated by shutting down the January Meeting before the public

comment period, releasing the private HIB complaints, attempting to bar Plaintiff from the February Meeting, threatening Plaintiff with arrest, and then arresting her. *Id.*; Am. Compl. ¶¶ 98-107.

The First Amendment proclaims: "Congress shall make no law ... abridging the freedom of speech." "[T]he protection granted by the First Amendment is not limited to verbal utterances but extends as well to expressive conduct." *Troster v. Pennsylvania State Dep't of Corr.*, 65 F.3d 1086, 1089 (3d Cir. 1995).

When a constitutional right like the one enshrined in the First Amendment is infringed by state officials, Section 1983 of the Civil Rights Act of 1871 provides a remedy:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 allows a party who has been deprived of rights, privileges, or immunities secured by the Constitution to seek damages and injunctive relief. See *id.*

A prima facie case under § 1983 requires a plaintiff to demonstrate that: (1) a person deprived her of a federal right; and (2) the person who deprived her of that right acted under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The first step "in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morr*a, 212 F.3d 798, 806 (3d Cir. 2000).

It is important to note, at the outset of this analysis, what Plaintiff does *not* argue:  the validity of the Executive Orders or any Board policy. Rather, Plaintiff insists that "there was no legislative enactment in issue" and that "the [Board] Defendants have not even identified the actual Executive Order on which they putatively relied in taking their actions to violate Ms. Murray-Nolan's rights, but instead have identified two other Executive Orders that are irrelevant to the Amended Complaint."  DE 13 at 22.

This is an enigmatic argument. First, it comes in response to Defendants' explicit citations to (and attachment of) the specific Executive Orders at issue. Second, Plaintiff's denial is contradicted even by her own pleadings. The Board's January Facebook Post, attached to the Amended Complaint, cited the Executive Orders relied upon, which covered the relevant time period. DE 10 at 34. And the Public Meeting Notice, also attached to the Amended Complaint, informed Cranford residents that the February Meeting would be the last to require masking pursuant to the Executive Orders. *Id.* 39.

But even if this Court *had* considered the constitutionality of the Executive Orders, the Executive Orders would have been held constitutional for essentially the same reasons explained by Judge McNulty in *Stepien v. Murphy*, 574 F. Supp. 3d 229, 246–47 (D.N.J. 2021). Applying intermediate scrutiny to the Executive Orders, which are content-neutral, "they are best analyzed as a regulation of the time, place, and manner of New Jerseyans' speech while inside school buildings." Intermediate scrutiny is easily met because there are substantial and related underlying governmental interests (continuation of in-person proceedings while preventing of the spread of

COVID),[10] because the mask mandate is narrowly tailored, and because there remain ample alternative avenues for communication. *Id.* (citing *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (articulating a three-part test for content-neutral regulation)).

Instead of challenging the government policies themselves, Plaintiff focuses on her right to appear at the January and February Meetings without a mask, which she characterizes as expressive conduct protected by the First Amendment. Plaintiff alleges that Defendants retaliated against her for exercising her right.

Indeed, retaliation for the exercise of constitutionally protected rights "is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990): *see also Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir.2000) ("Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."). But to plead a First Amendment retaliation claim, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017).[11]

Plaintiff's conduct is the disputed issue. Plaintiff characterizes her decision not to wear a mask and sit silently at the January and February Meetings as a silent, nondisruptive protest. Sitting

---

[10] Importantly, Plaintiff does not dispute the efficacy of mask wearing itself as a means to slow the spread of COVID-19.
[11] Defendants do not challenge the second or third element here.

without a mask to protest a mask mandate, in Plaintiff's estimation, is protected expressive conduct. But because this conduct is not *inherently* expressive, even in the broader context of a Board meeting requiring a mask mandate, it does not enjoy First Amendment protections.

Whether a plaintiff's conduct is constitutionally protected is a matter of law. *See Connick v. Myers,* 461 U.S. 138, 148, n.7 (1983). Of course, "[it] is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). However, "a recurring jurisprudential concern 'is that the Free Speech Clause may be invoked by anyone who violates a law, claiming to protest against it.'" *Troster v. Pennsylvania State Dep't of Corr.*, 65 F.3d 1086, 1093–94 (3d Cir. 1995) (quoting Tiersma, *Nonverbal Communication,* 1993 Wis. L. Rev. at 1585). "Virtually every law restricts conduct, and virtually any prohibited conduct can be performed for an expressive purpose—*if only expressive of the fact that the actor disagrees with the prohibition.*" *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 576 (1991) (Scalia, J., concurring) (emphasis added).

One cannot, for example, run a red light as a social protest. *Cox,* 379 U.S. 536, 554 (1965); *State of Washington v. Adams,* 3 Wash. App. 849, 479 P.2d 148 (1971) (rejecting contention that use of a set net in violation of regulatory salmon fishing statute was "symbolic speech" protected by First Amendment where defendant's only purpose was to demonstrate the irrationality of the statute prohibiting the net's use). Thus, courts reject "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).  That is, the Supreme

20

Court has extended First Amendment "only to conduct that is inherently expressive." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* ("*FAIR*"), 547 U.S. 47, 66 (2006).

Deciding whether conduct possesses "sufficient communicative elements" to implicate the First Amendment require examining "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). However, in some situations, the context of the expression may be considered because "the context may give meaning to the symbol." *Id.* 405 (citing *Spence* (display of flag with peace sign "roughly simultaneous with and concededly triggered by the Cambodian incursion and the Kent State tragedy.")).

Inherently expressive conduct should be "overwhelmingly apparent." *FAIR,* 547 U.S. at 66 (citing *Johnson*, 491 U.S. at 406). For example, in *FAIR*, law schools challenged as compelled speech a regulation denying federal funding to institutions that do not treat campus military recruiting as they would any other prospective employer. 547 U.S. at 55. As relevant here, the Court held that the purpose of the law schools' prior practice of requiring military interviews to be held away from the law schools was not "overwhelmingly apparent" because there could have been numerous reasons for doing so other than disapproval: for example, the law school's interview rooms were full, or the recruiters' personal preferences. *Id.* 66. The Court rejected the law schools' argument that they previously "expressed" their disagreement by treating military recruiters differently from other recruiters, holding that "these actions were expressive only because the law schools accompanied their conduct with speech explaining it." *Id.*

Plaintiff's argument here is essentially the same: that her conduct was expressive because she told Defendants that it was, and sued to prove it. DE 39 at 23 (arguing that Police Defendants

21

arrested her after she told them she was engaged in a protest and had filed the OSC). But "the fact that such explanatory speech is necessary is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection under *O'Brien.*" *Fair*, 547 U.S. at 66. "If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Id.* Phrased another way: if conduct is inherently expressive, it should not require much to explain why.

Plaintiff does not cite any authority to the contrary. Indeed, not a single court to examine mask wearing has deemed the act of mask wearing itself, to say nothing of *not* wearing one, expressive conduct. As one district court found, someone observing Plaintiff sitting quietly and not wearing a mask would, absent any explanation, "have no idea why [she] is not wearing a face covering." *Minnesota Voters All. v. Walz*, 492 F. Supp. 3d 822, 837–38 (D. Minn. 2020), *appeal dismissed*, No. 20-3072, 2020 WL 9211131 (8th Cir. Nov. 9, 2020). Plaintiff might be exempt from the mask requirement, or could have forgotten her mask, or, as Plaintiff has explained, "trying to convey a political message." *Id.*; *see also Zinman v. Nova Se. Univ., Inc.,* No. 21-CV-60723, 2021 WL 4025722, at *13 (S.D. Fla. Aug. 30, 2021), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, No. 21-CIV-60723, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021) (rejecting argument that refusal to wear a mask is inherently expressive of his disapproval of mask mandates); *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 237 (D. Md. 2020), *appeal dismissed*, No. 20-1579, 2020 WL 6787532 (4th Cir. July 6, 2020), and *aff'd in part, appeal dismissed in part*, No. 20-2311, 2022 WL 1449180 (4th Cir. May 9, 2022) ("while wearing a face covering might be to several of the plaintiffs a sign of capture on the battlefield, and subservience

to the captor, that meaning is not "'overwhelmingly apparent.'"); *L.T. v. Zucker*, No. 121CV1034, 2021 WL 4775215, at *5 (N.D.N.Y. Oct. 13, 2021).

Accordingly, because Plaintiff's conduct was not protected by the First Amendment, Plaintiff fails to state a claim for § 1983 retaliation.

### b.    The Attorney Defendants are not "state actors" pursuant to § 1983

The section above discussed one requirement for a § 1983 claim: a violation of a federal right. But there is a second: the right must have been violated by a person acting under color of state law (a "state actor"). The Attorney Defendants argue that they are not "state actors," and therefore that there is another basis to dismiss the Amended Complaint against them. This Court agrees.

A plaintiff suing private individuals must identify "some action that is 'fairly attributable' to the state." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). More specifically, a plaintiff must show (1) that the Attorney Defendants' acts were "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and (2) "that the Attorney Defendants" may fairly be said to be state actors. *Id.* "A person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state." *Id.*

Here, the Amended Complaint alleges that the Attorney Defendants "recommended [early] termination" of the January Meeting and later threatened to, and actually did, have Plaintiff arrested. ¶¶ 100, 101, 105. Plaintiff alleges, in other words, that the Attorney Defendants counseled their client incorrectly.

However, attorneys performing their traditional functions—that is, counseling clients—will not be considered state actors solely because of their position as officers of the court. *See, e.g., Polk County v. Dodson,* 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); *Barnard v. Young,* 720 F.2d 1188, 1189 (10th Cir.1983) ("[P]rivate attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983."). Nor do attorneys become state actors merely because they represent state or local governments. *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009).

Plaintiff's few citations are inapposite. *Flagg Bros. v. Brooks*, 436 U.S. 149, 160 (1978), involves a proposed private sale of goods permitted by the New York Uniform Commercial Code, which the Supreme Court held *not* to be state action. DE 30 at 23. It is difficult to understand how that case assists Plaintiff.

Likewise, Plaintiff cites *In re Supreme Ct. Advisory Comm. on Pro. Ethics Opinion No. 697*, 188 N.J. 549, 556 (2006), apparently to argue that the Attorney Defendants had a conflict with the Board Defendants because Plaintiff sued both. DE 30 at 23. But that case is an advisory opinion discussing conflicts of interest in representing and appearing before a municipal body, which is not at issue here. If Plaintiff is using it to argue that the Attorney Defendants' actions were outside their scope of representation, that argument would only serve to defeat Plaintiff's state actor claim. *Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 616 (D. Md. 2016), *aff'd*, 685 F. App'x 261 (4th Cir. 2017) (if attorney's actions "were *ultra vires* and inconsistent

24

with her governmental client's directives, that fact (though not dispositive) would tend to weigh against a finding that she was clothed with the authority of state law").

Accordingly, because the School Defendants are not state actors, this provides an independent basis to dismiss the § 1983 claims against the Attorney Defendants.

### c.     The Police Defendants had probable cause to arrest Plaintiff

The Police Defendants also argue, correctly, that Plaintiff fails to state a § 1983 claim against them because they had probable cause to arrest Plaintiff. Indeed, "if probable cause existed to arrest Plaintiff for criminal conduct, Plaintiff may not maintain his claim that he was instead arrested for protected speech." *Williams v. Vanderud*, No. CV 16-1245, 2017 WL 4274265, at *12 (D.N.J. Sept. 26, 2017) (citing *Pulice v. Enciso*, 39 F. App'x 692, 696 (3d Cir. 2002) (affirming summary judgment against plaintiff's First Amendment claim of retaliatory arrest where plaintiff was not arrested for expressing her views but for violating the law), *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (where probable cause exists, "any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail").

Here, the Police Defendants arrested Plaintiff for her willful refusal to wear a mask where one was required by Executive Order and local policy. Plaintiff does not substantively dispute this contention, instead restating the First Amendment argument rejected above. DE 39 at 21, *et seq.* But, as the Police Defendants argue in reply, Plaintiff was warned prior to the February Meeting of the masking policy, was warned again at the door, and warned yet again that she would be arrested for trespassing before officers actually arrested her. DE 42 at 8-9. Whether or not Plaintiff's protest was ultimately found to fall within the First Amendment's protections (it did not), the fact remains that the Police Defendants had probable cause to arrest Plaintiff. This

conclusion provides another basis to dismiss the Amended Complaint against the Police Defendants.

### 2. Plaintiff fails to state an NJCRA claim

Defendants also seek to dismiss Plaintiff's NJCRA claims (Count Two). Like § 1983, the NJCRA allows a party who has been deprived of any rights under either the Federal or State Constitutions by a person acting under color of law to bring a civil action for damages and injunctive relief. *Coles v. Carlini*, 162 F. Supp. 3d 380, 404–05 (D.N.J. 2015). The NJCRA was modeled after 42 U.S.C. § 1983 and "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983." *Chapman v. New Jersey,* No. 08–4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Courts in this district have previously recognized that "the New Jersey Civil Rights Act is interpreted analogously to 42 U.S.C. § 1983." *Coles*, 162 F. Supp. 3d at 404–05 (collecting cases). Thus, for the same reasons the Court dismissed Plaintiff's § 1983 claims, Plaintiff's NJCRA claims are also dismissed.

### 3. Plaintiff fails to state a § 1985 claim

Defendants next seek to dismiss Plaintiff's § 1985 conspiracy claims (Count Three). Att'y Defs.' Br. 39; Board Defs.' Br. 25; Police Defs. Br. 26. The Attorney Defendants add an argument: that attorneys cannot "conspire" with their clients for § 1985 purposes.

#### a. Section 1985 claims against all Defendants

Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). A plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly

or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971).

Despite its application to private conspiracies, § 1985(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others," or to be a "general federal tort law." *Id.* 101–02. The *Griffin* Court emphasized that § 1985(3) requires the "intent to deprive of *equal* protection, or *equal* privileges and immunities." Thus, owing to that language and the fact that § 1985(3) was part of the Ku Klux Klan Act of 1871 passed "to give the federal government a weapon against the wave of anarchic and violent civil resistance to Reconstruction that marred the post-Civil War South," a claimant must allege "some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action" to state a claim. *Farber*, 440 F.3d at 135, citing *Griffin,* 403 U.S. at 102 (emphasis added). *Griffin*, in other words, implied that there may be some "*otherwise class-based*" discrimination beyond race, but did not further define any class.

In opposition, Plaintiff interprets more recent Supreme Court precedent to have "removed" "race and economic class discrimination" as the "sole bases" for § 1985 claims. DE 30 at 29-32, (citing *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825 (1983)). But *Scott* did not broaden the reach of § 1985, and certainly not to Plaintiff's desired scope. Rather, the Supreme Court held that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed

27

their cause, most notably Republicans" but found "no convincing support…for the proposition that the provision was intended to reach conspiracies motivated by bias towards others on account of their *economic* views, status, or activities." *Id.* 836-37 (emphasis in original).

A subsequent case cited by Plaintiff, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993), only bolsters the conclusion that Plaintiff cannot claim to be a class based on her masking views. In *Bray*, Justice Scalia wrote for the Court that "[w]hatever may be the precise meaning of a 'class' for purposes of *Griffin*'s speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." 506 U.S. at 269 (1993) (citing *Scott*, 463 U.S. at 850 (Blackmun, J., dissenting) ("the class must exist independently of the defendants' actions; that is, it cannot be defined simply as the group of victims of the tortious action.")). Plaintiff herself recognizes that "the issue of whether discrimination against the 'unmasked' constitutes 'invidious' discrimination admittedly is one of first impression." DE 30 at 32.

In the absence of any support, this Court declines to broaden § 1985's reach to include Plaintiff's allegations. Accordingly, this claim must also be dismissed.

**b. Section 1985 claims against Attorney Defendants**

The Attorney Defendants also add that they cannot, as Board attorneys acting within the scope of attorney-client representation, be held liable for conspiracy. They are correct.

This situation implicates the intracorporate conspiracy doctrine, which posits that there cannot be any conspiracy between a corporation and its officer, who is part of the corporation because a corporation cannot conspire with itself. The same rule exists for attorneys. *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) (holding that frivolous lawsuit and dissemination of

28

defamatory information may "violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge under section 1985"). To state a § 1985 claim in this context, a plaintiff must allege that the attorney is acting in a personal, as opposed to official, capacity." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003); *see also Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) ("as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy") (citing *Heffernan*, 189 F.3d 405).

That has not been alleged here. In opposition, Plaintiff discusses the applicability of § 1985 to private versus state actors, which is irrelevant to this issue.[12] DE 30 at 29. Accordingly, this provides an independent basis to dismiss Plaintiff's § 1985 claim.

### 4. Plaintiff fails to state a § 1986 claim

Defendants next seek to dismiss Plaintiff's § 1986 conspiracy claims (Count Four). 42 U.S.C. § 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case....

Section 1986 constitutes an "additional safeguard" for those rights protected under 42 U.S.C. § 1985. *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).  Consequently, because §

---

[12] This appears in every version of Plaintiff's opposition, which are all similar. It appears to relate, however, only to the Attorney Defendants, the only group of Defendants whose role as state actors are at issue.

1986 violations "by definition depend on a preexisting violation of § 1985," *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980), Plaintiff's failure to state a § 1985 claim dooms her § 1986 claim.

## IV.    CONCLUSION

For the reasons above, the motions to dismiss are GRANTED and the Amended Complaint is dismissed in its entirety. Because Plaintiff has already had one opportunity to amend and because any further amendment would likely be futile, the dismissal will be WITH PREJUDICE. An appropriate order follows.

Dated: September  8, 2022

_____
Evelyn Padin, U.S.D.J.